7276 and 24-7377. Each side will have 25 minutes but I know we have a division of time. Good morning your honors and may it please the court. Jacob Ecker for the federal government. This court should dismiss the senator's appeal for lack of jurisdiction. The court's decision in Alsea Valley is on all fours and dictates that the district court's remand order is not final for purposes of appellate jurisdiction. The case below involved the National Marine Fisheries Service designation of critical habitat for two arctic seal species. The district court held that the agency failed to consider certain factors relating to the size and location of the designation and the district court remanded to the agency for further proceedings. The agency initially appealed but voluntarily dismissed that appeal and accepted the court's remand order. Without the agency's participation the district court's remand order is not final under Alsea Valley. The principal question about how to read the district court's remand order. So it seems possible to read it as actually precluding the service from designating the same territory again on remand. The sentence where the court says that it did not read the ESA to permit the service to designate nearly all of the seals occupied habitat within the United States as indispensable to the seals conservation. Is that sentence saying that the same designation cannot be done on remand? I don't read the district court's remand order that way. The way I think the government has read it is that it's a general remand like those in Alsea Valley and in your 2023 decision in CBD where the agency can potentially reach the same outcome on remand. It may or may not but the point of those cases and the remand here is that the decision need not come to this court until the agency's remand proceedings have concluded. I guess I want to make sure that government is taking the same position here that I read your briefs because I have the same issue Judge Friedland has. It seems to me that jurisdiction will depend on the scope of and the reading of the district court's order. So in your briefs you said that it's still possible to designate the same areas as critical habitat and you said that there would still be this possibility of the same result but taking into account the factors identified. So is that the government's position today? Yes your honor and you'll see that we maintained that position in our third brief after we dismissed our appeal. So we maintain that position today which is that the district court's remand order is the type of general remand order like in Alsea Valley and its progeny. And so does the fact that you're saying that affect how we should read this? I mean if we wouldn't have read it that way what's the implication of you saying this today? That's a fair question your honor. I think the court is entitled to read the district court's opinion you know in the way that it deems fit. Our view is that the district court's remand order is a general one and so you know I think the point that the government makes at this point is that that order has placed the decision making process back before the agency. So the agency is going to parse that decision in the first instance. If this court disagrees with how the agency views the district court's remand order, it would have the opportunity following a subsequent challenge and a subsequent appeal to pass on that. But if well if the district court has taken off the table doing the same thing again then we're kind of in a similar situation to Crow aren't we? I'm not sure that's right because in Alcee Valley itself the district court had taken off the table one possible outcome which in that case the agency had listed only naturally spawning coho salmon and not hatchery spawned salmon and the district court as the this court's opinion explained had sort of cordoned off and put a border around that outcome. It was as I read it it was more of a they'd cordoned off a possible rationale for a decision but not exactly an outcome because it was more just like you need to be consistent then you can't do this. I think you know your honor if the court reads the district court's remand order in the way that you're suggesting it does bring it closer to cases like Crow than Alcee not you know closer than it would be under our reading of the district court's so under that reading now we dispute that reading and so we maintain that the remand order is a general one. If the court disagrees I think Alcee Valley ought to still apply because there's a broad range of outcomes that are that remain possible on remand. That's a little bit different than Crow as I understand it because there there was essentially ordering the Fish and Wildlife Service to include something in its final order which is a little bit different here. That's right so the Crow I think it it's about this idea that there's really nothing left for the agency to do on that specific issue right the district court's remand order required that the ultimate rule include this recalibration facet of it and that was you know like other cases where there's really nothing left for the agency to do on remand and so as a practical matter it's final and here you know it's hard to figure out what Crow was doing though because it seems like that could have been appealed later and so I don't do you have an explanation of what we should make of Crow and the fact that that could have been appealed later? It's fair enough I mean it's a fair question I think there is some tension in the court's case law. I think your 2023 decision addresses that aptly and I don't think the court should depart from the reasoning in the 2023 CBD decision here. I just wanted on the question of how to read the district court's order I understand the principal brief by the NMFS there's the at page 28 to 29 seemingly at intention with your current read so that also just highlights I guess maybe that the district court order is susceptible to more than one reading but it's I mean you hear it says the 160 million acre size of the designations and of course in concluding that the court does not read the ESA to permit the service to designate nearly all of its seals occupied habitat and you know goes on to argue all the reasons why that was wrong and there's no sound basis for the district court to manufacture an additional prohibition against designating nearly all of the species occupied habitat which seems to me is that at least the original read was that the district court did in fact prohibit designation of nearly all of the species occupied habitat. I certainly understand what you're saying Judge Sung you know I think we read the remand order as more general than and then at least the Crow Indian tribe remand because it's not directing a particular outcome in that case they're part of the remand required an aspect of the rule be and here regardless of the rationale which our opening brief which is no longer before the court attacked I mean that is not part of the remand order it's part of the rationale that the agency is going to have to grapple with on remand. And so the government's view is that this case is closer to Alcee Valley, Pitt River and the 2023 CBD decision than it is to Crow and cases like it and so we urge the court to dismiss for. Sorry can I go back to this question of like whether there's some sort of estoppel or something from what you're saying today. If if how do we know that on remand the agency would read this the way you're saying today? I don't I can't provide a guarantee on that front right and I think that's part of why Alcee Valley supports dismissal because I can't predict the agency's outcome at this point and it may mean that these proceedings are unnecessary or it may mean that a later appeal is the proper time for that to to get adjudicated. So you your position is on remand the agency can say that it had no leeway that it had to or it must issue in a certain manner. That really doesn't it doesn't seem right to me that you can stand here and make that make representation as you have under part of the agency and then the agency would be able to flip that. The government's position today is that that's not what the remand order says. I can't control the outcome before the agency but my read. No but I mean if it can is that the service go back and say you must do this or you cannot you cannot or you must you cannot do this you cannot designate nearly all of the seals habitat. I understand the court's concern and it comes from that language that Judge Sung quoted. I just can't get ahead of the agency's process at this point and I know that's unsatisfying. What you're saying today isn't binding on the agency on remand. I don't think so. And how long do you think this will take? I do not know. I know they've started thinking about what a remand would look like given this appeal and the forceful arguments that the center has made for jurisdiction. They've not yet gotten very far in that process because they want to see how this how this. Because we're in a situation right where last time they needed to have a court order to actually do this. I mean will this never happen? I don't know the answer. I know that if there is substantial delay that there are rights of action that can accrue from that context. You're right to point to that Judge Friedland. The center has sued in the past seeking designations and the ESA provides for that. Is that another distinction between this case and I'll see where if I remember correctly the agency at the time we were considering the case and whether we had jurisdiction the agency had already sort of presented a plan about what it was going to do and engaging a new consideration of the rules that did seem to think that these other options for reaching the same outcome were actually viable and potentially going to happen as a practical matter. That's true the court did point to that in LC. I'm not sure that those same dynamics were at play in CBD or or Crow. I'm just not recalling on the top of my head. Do you think if if your position is correct would we also lack jurisdiction over Alaska's cross-appeal? Well so Alaska I think you could certainly dismiss that cross-appeal as well. They've committed to voluntarily dismiss that appeal and you know we haven't taken a position on LC Valley but I certainly understand extending the logic to that appeal as well. I guess we can ask them about that. Right. Thank you your honors. Okay thank you. So who's next? Good morning your honors and may it please the court. Kristin Monselle on behalf of Center for Biological Diversity Appellants Cross-Appellees. I'd like to reserve five minutes of my time for rebuttal. Before addressing the merits I'd like to address why this court has jurisdiction to hear this appeal and that's because this case falls squarely within the exceptions articulated by this court in Alcea Valley and and to comply with the district court's order on remand the agency must apply entirely new substantive factors that the district court invented such that it won't be the same decision on remand. It will be based on entirely new substantive considerations mandated by the district. So I this is I know you argued this in your brief too but I I have trouble understanding it seems like you're basically saying the procedures the agency will follow the things the agency will need to consider are wrong things but if the agency could get to the same outcome about what is designated I'm not sure why those procedures or considerations are really of interest to you. You really care about the outcome right? Like why do you care if they if the agency thinks about a few extra things? It's true that we care about the ultimate outcome but the agency in its original merits brief said and I quote on page 222 that the went so far as to state its interpretation sufficiently broadly as to appear to foreclose the agency's designations for the seals altogether. Okay that's a different argument though that's the outcome can't be the same and that's not about sort of the procedures along the way so I guess I personally think that's the much stronger argument than something about what has to be considered along the way. Yeah I think both both are true here the the constrictions that the that it essentially cannot issue the same decision both legally and practically and it's the legal aspect of it that I think maybe is the more specific answer to your question your honor that the the agency now has to apply this new substantive framework that does not exist in the statute and that elevates the bar for critical habitat designations and that's why we think this case is sort of on point with the Crow the Crow Indian tribe case. There the district court's decision foreclosed any relief to the interveners on the issue of whether a future delisting rule had to include recalibration because the district court ordered that it did and that's the same situation we have here. The district court orders means that a future critical habitat designation must apply the standard for an unoccupied critical habitat and designating occupied critical habitat which this court has repeatedly recognized is a much more onerous standard must evaluate foreign conservation efforts and must must consider excluding the areas Alaska wanted out and this appeal is the only way that we can get those issues heard because the legal questions are distinct from whether the ESA mandates that the agency do certain things versus whether it seems to me there's sort of a question of you could win the battle here and lose the war and that you know we could have jurisdiction and if we disagree with you on the merits then you would never have the opportunity to go back as you might on a remand and so I guess your position is jurisdiction and decide based on this record is that your position? Yes that's correct your honor we we think the district court was wrong and elevates the bar for critical habitat designations in a manner that is inconsistent with the plain language of the statute. So can I go back to the what you think would happen on remand so if on remand the just the agency did these procedures came up with a narrower designation of territory why couldn't you appeal then and say this is too narrow and it's because of these three interpretations that appeal then later in five years or ten years or whatever a long time it would be to say these same things you're saying now? I think the the distinction is that the legal question that the court would be addressing at that point would be different than it is addressing now I think there's a what way though because it would if it if the agency uses these same three principles that you think are wrong why would it be different later that you'd still be saying they should not relied on those? Because the the district court's order it is based on its interpretation of the plain language of the Endangered Species Act and what the agency must do in designating critical habitat not just for these seals but for for any species and so it has repercussions outside of this this case as well however if the agency does consider these you know three three factors and we ultimately decide to challenge that decision I think that the question the court will be posed with at that point what is whether it was an abuse of discretion for the agency to have considered those factors not this plain language of the ESA argument that we have. Why wouldn't that be preserved I mean why wouldn't that be part of the package I think is what we're trying to get at that would be appealed from the agency's decision is not just going to be these factors I basically it's going to have to incorporate in its decision a number of these other statutory interpretations so wouldn't the whole package come back up? Well again I would point the the court to the Crow Indian tribe case where the this court held it had jurisdiction over an issue because the district court's remand order constrained the agency's discretion in such a way that it had to include this recalibration issue in any future delisting rule so even though interveners in that case could have ultimately gotten what they wanted which was the delisting of the grizzly bear that could only occur if the agency did this specific substantive aspect of its rulemaking and that's the same situation that we have here the district court has imposed substantive obligations on the Crow treated that recalibration as sort of an end in itself I admit I don't really understand that because it seems more like a procedure along the way to a decision but that wasn't treated that way it was like including this thing is kind of the end of itself and you're talking more about the procedures along the way to the end in itself as I understand your argument it's like what's going to get considered when you get to get to the designation yes however I would also note that the as this court said in in Pitt River and other cases the Alcea Valley didn't create a hard and fast rule against an appeal in this situation and that the exceptions are considerations rather than than strict prerequisites so I think that the court can look at the exceptions through a practicality lens and here I think it makes sense that these purely legal issues of statutory construction be considered now rather than waiting the uncertain outcome of some protracted remand based on what you know we think are clearly erroneous legal premises that kind of begs the question I mean that might be your preference to get those statutory determinations settled now but that doesn't say what we originally asked is isn't the whole package going to come back up if you disagree with the ultimate direction that the service goes yes it would come back up it could you prefer it now not later well I think it also makes judicial sense to in the interest of judicial efficiency which I think is the whole premise underlying the Alcea Valley line of cases and I think if it does if it does look the same then Alaska is going to sue and if it doesn't look the same then then you know we might so it makes more sense to just consider these fundamental issues now that again have repercussions not just for these seals that are now deprived of these protections but many other species for their their critical habitat designations sorry can I just so now it seems like maybe you're kind of taking the premise that it actually could be appealed later and I just wanted to follow up to make sure I understand your position so I it seems like if the agency on remand felt bound by these statutory interpretations that you think are wrong it would probably say that and so then there could be a later appeal where we would have to turn figure out these statutory interpretation questions but your earlier position was that somehow that wouldn't happen and could you just explain why I think I there's a legal aspect of this and then a practical aspect of this and I think practically speaking it's very unlikely we would see the same rule on remand because of the constrictions the district court put on the agency and because of what the agency has already said about how it's interpreting the district court remand to essentially preclude these these designations so wait a second where are you thinking they're saying that because they said they just told us they're not saying that well in their opening in their opening merits brief they did say that the district court's order is so constrictive to as essentially preclude the same designations for these seals or designations of them all together because the best available science does not allow for any greater specificity so it it would be in the interest of efficiency to just hear these issues now and I think the court can rely on what this court did in the crow indian tribe case to um to hear it now are you basically arguing that all co is just wrong though I mean it would have been more efficient there too um no I don't think so your honor I mean I think this case does fit within the exceptions and I think a distinction there is that in that case um that it was still possible that the agency could still list the the fish by re-evaluating its distinct population segment and how it was categorizing the the fish species at issue in that case which is a science-based question it was not a case that had the same statutory interpretations at at issue in here and as you as you sorry go ahead go ahead and as you know and as was noted previously another distinguishing factor I think is that in in the LCA case the agency had you know developed this four-step action plan that was very detailed in terms of how it was going to comply with the district court's remand and that there would be a public process here we have none of that does it matter if I recall correctly and I'll see the thing that the lower court had found to be problematic was or that the decision was intention with the agency's own rule and part of what I think we were considering on appeal was that the agency could actually revise the own its own rule that made its decision inconsistent so everything was in control essentially of the agency and there's maybe a distinction here because what the district court is saying that the agency's actions were in conflict with was the statute so in that sense the agency has no ability to revise the statute it has to comply with the statute so the extent that the district court was saying what you did was inconsistent with the statute there's really nothing the agency can do on remand to remove the inconsistency other than to change its decision yeah is that a fair distinction that's correct your honor yes um now if I could turn briefly to the merits assuming your honors get there um I um in in designating the occupied critical habitat for bearded and ring seals the agency did everything the endangered species act requires of it it relied on the best available science to identify the physical and biological features essential to the seals conservation and relied on the best available science to identify the specific areas containing these features and it designated these areas after determining they require special management and considering the economic and other impacts of the designations nothing more was required and while the designations are no doubt large that does not render them unlawful rather the size of the designations reflect the huge ranges and life history needs of these ice dependent seals and the dynamic nature of sea ice as the agency repeatedly explained in its decisions and I'd like to start by excuse me discussing the the first issue because that error is one that infected the district court's analysis on the other two issues and in our appeal um and specifically um in designating occupied critical habitat the agency properly designated the specific areas that contain the physical and biological features essential to the conservation of the seals the district court's holding that the designations are unlawful because the ESA requires the specific areas designated to be essential misreads the ESA and the relevant case law essential like the district court was maybe confused by the center for biological diversity jaguar case because of the long passage about essential can you give us your read of what that was yes your honor I think if you read that case and the Weyerhaeuser case on which it relies um in context then it becomes clear that both courts were just merely paraphrasing the definition of critical habitat they weren't holding what the district court read those opinions to hold nor could they have because that question was not before either of those courts and in the jaguar case the portions on which the district court relied were about designating unoccupied which is irrelevant it does seem like dicta but we have this reason to dictate a rule in our court can you tell us why this isn't reason to dictate or how you're dealing with that rule um I think it's um unreason dicta because it is the standard that applies to unoccupied critical habitat and here the district court's decision essentially reads out a key phrase from the definition of occupied critical habitat which is the on which are found those physical and or biological features and in this the context of the plain language of the statute essential to the conservation of the species modifies physical and biological features not the phrase specific areas such that all the statute requires is that the agency find that the features themselves are essential to the species conservation which is exactly what the what the agency did here one question I have is that under the language of the ESA that a critical habitat can't include the entire geographical area but it would seem to me that your interpretation would actually potentially permit that in every case so long as the agency says well there's this widely dispersed essential feature so how would your interpretation not collide with the actual statute well the only geographic limit in the statute itself is that the agency not designate the entire range of the species unless the secretary determines that it's appropriate in that particular case and here that's not what happened they did not designate the entire occupied range of the species there's for example a 30 million acre exclusion in the northern habitat in this the southern habitat they did not extend the boundaries of the critical habitat as far as the seals are occupy those areas because the agency determined those areas don't have the essential sea ice features they moved the shoreward boundary of the critical habitat between the proposed and final rule after a re-evaluation of the best available science to have it be smaller so this is this is not a situation where the you know agency ran afoul of the only restriction in in the statute itself and this this court recognized in the polar bear case that you know all means all it doesn't mean merely all can I ask about oh sorry go ahead no I had another question though about these overlapping areas in your view can you isolate in some respect the net benefits to the critical habitat designation that you think are not provided for already that was my question to the redundancy can you speak to the redundancy issue right um the redundancy in the their argument is that these protections would follow from other area other things without this without that I see um so the agency found that there would be numerous benefits to the seals from this critical habitat designation specifically from the section 7 consultation process which would require the all federal agencies to ensure that any action they're taking that might affect the these habitat areas to ensure that there wouldn't be any adverse modification or destruction of those habitat areas the agency also pointed to other benefits from to the seals from these critical habitat designations and and as you read these things you're describing they're not provided by just the listing of the species that's correct they're not provided for by any other law it's only the designation of critical habitat that requires agencies to ensure their actions don't adversely modify or destroy that critical habitat and the analysis on this point is consistent with other information in the record such as cbd ser 031 to 37 which is a study we submitted that finds that species with critical habitat designations are more than twice as likely to be recovering than those without so the um the designation of this habitat does provide the species with numerous benefits and furthermore the statute requires that the agency designate critical habitat for listed species irrespective of any other protections that are in place unless they invoke the rare exception of a not prudency finding which they did not do here unless the court has any other questions i'll reserve the rest of my time for rebuttal sounds great thanks thank you good morning your honors my name is norman james i'm here uh on behalf of the appellee in cross appellant state of alaska let me start um well let me start i don't we don't want to wade into the all c valley thicket you don't have to for good reason uh i mean we we view it as a double-edged sword uh we did make an agreement as as counsel uh for the agency said that uh if the uh main appeal is dismissed we dismiss our cross appeal that's our position so i also wanted to address though a related issue because it actually does segue into into the first issue that uh that's been raised here about the the failure to properly explain why these enormous critical habitat designations are necessary because it does tie into the questions that were asking earlier about all c valley uh reading from the uh from the lower court's decision uh this is on on page star nine um quote uh nash marine fishery service nymphs made these designations however without explaining why the entirety of each designated area is necessary to the seal survival and recovery or while why a smaller area would be inadequate for their conservation especially since a significant portion of the bearded seal's habitat and most of the ring seals habitat are outside the united states territory which is addressed further below uh the the judge then added a footnote uh footnote 101 which uh i think is relevant to this to what we're discussing today let me find it uh at the end of that footnote um the judge said the final sentence while the court agrees that the designated critical habitats are rather large the court is not persuaded that an area cannot be essential to the conservation of a species simply because it's large we don't think we don't think that judge gleason uh was trying to put uh trying to create new uh requirements and impose them on the agency we think and there are other places where the judge made similar statements we think what the judge said was uh that these are these are unusually large uh that doesn't mean that they're per se invalid but you have to provide a credible explanation for why you're designating such an enormous area again at the conclusion of her discussion of this issue she says because nymphs failed to consider any foreign nation any foreign nation efforts to conserve the seals and because it failed to articulate a satisfactory explanation for why the entirety of the designated areas in the u.s territory are indispensable to the seal survival and recovery the court finds the service's critical habitat designations for the bearded seal and the ring seal would be arbitrary and capricious so uh we don't read it as as precluding the same area from being designated or for that matter even a larger area but they've got the agency has to provide an explanation for why this is critical habitat and that segues again into the first issue the first if you look at critical habitat you look at the warehouse warehouser decision you look at cbd versus uh fish and wildlife service decision uh which i call the rosemont case that was the case i was actually involved in that case those cases dealt generally with what critical habitat is and in warehouser and again uh in the cbd case uh the court reinforced the fact that critical habitat the term critical means something it's critical it's essential to the conservation of the species there's a hierarchy in the statute there's a two-part test if you will there's occupied and there's unoccupied and for many decades beginning in 1980 when the first regulations were promulgated by the by the fish and wildlife service and by nymphs implementing uh the requirements to designate critical habitat there was always a requirement that the agency has to show that occupied the designation of the occupied habitat would be insufficient to conserve the species before you could designate unoccupied habitat that's the quote onerous requirement that we that we've been throwing around it's a it's a hierarchy but it doesn't change the fact that it's as as we've discussed in our brief it's critical habitat and i i guess i'm confused under your reading how you aren't collapsing occupied and unoccupied what is the difference between the two if you read occupied to have this additional requirement well in either case okay in either case uh you still have to show that the the agency still has to show that there's conservation value to the areas you're designating the arguments being made on the other side but that's conservation value well i guess it depends what you mean by those words but this idea that it has to be absolutely essential is not in the statute as i read it as for occupied territory but it seems like you want to add it in and at that point it seems like it becomes the same as the unoccupied territory well but if if you do that your honor you you're on the road to getting absurd results and let me let me give you a couple of examples that highlight this in fact in this case uh there were 30 million uh 30 million acres that were excluded from the critical habitat for the ring seal because the navy was conducts training exercises in that part of the arctic ocean and in in and remember when you when you exclude something under section 4b2 of the esa these are areas that are that qualify as critical habitat they meet the test but you you exclude them because of conflicts with economic resource uses or in this case national defense uh in this case uh in excluding 30 million that's an enormous area that's the size of pennsylvania okay so this this is not a minor adjustment the the uh the the agency said uh quote although the area requested for exclusion contains one or more of the essential features so it's automatically critical habitat of the arctic ring seals critical habitat data are limited at this time to inform our assessment of the relative value of this area to the conservation of the species so in other words you're simply designating areas because the feature is there but we don't know whether it's actually going to be helpful to conserve the species and that's the whole point of i really don't understand your answer to my question at all what do you think is the difference between occupied designated occupied territory and designating unoccupied once you add what you want to to occupied i think i think there's a higher standard because you start again as the hierarchy in the statute you start with areas that are occupied uh and designate those first then if those aren't sufficient to conserve the species you move on and you can designate unoccupied areas it's a it's a it's a two-part hierarchy so i i want to go back to your foreign reference but before i get to that i want to ask about the exclusions and it seems to me that the call that the service made was this low marginal benefit of designation that that outweighed the low cost right or low marginal cost and alaska doesn't seem to be challenging that correct well uh well and then the result was if if you're not really challenging it what is it where is it that the agency's determination is arbitrary and capricious on these exclusions well i think i well i think the what the district court found was correct that the agency determined that critical habitat provides uh very little benefit because by virtue of the species listing and under the marine malprotection act the species habitat is already being protected so it doesn't add any real conservation value any conservation benefit to designate critical habitat our argument and what what the judge found below was that given that that the state had requested and north slope borough had requested that areas be excluded given that given that the agency found there'd be be very little benefit to designating critical habitat it was arbitrary and capricious not to go ahead and at least consider those uh exclusions and if you're not going to if you're not going to exclude any areas on on the basis of economic impacts at least at least give it a fair shake and explain why you're not doing it is your argument a procedural one of a lack of explanation or is it a substantive one of what the agency was required to do i apologize it's it really is more procedural that they just stopped and said well we exercise our discretion not to consider it when again cases like bennett versus spear and weyerhaeuser tell the service they have to go through the process they have discretion like any agency as to their ultimate decision and that's reviewable under the administrative procedure act but they at least have to go through the process and explain their decision they didn't do that they claim they had discretion to just stop but i guess i'm confused about this because i mean cbd was just arguing that that the agency did find benefits and i i even kind of thought at points in your brief you seem to acknowledge that they had said that so what is like there's the increased education benefit and awareness of the protected habitat why aren't those benefits that the agency identified additional benefits because if you again if you look at the language in the uh in the rule your honor it's all speculation it's this may happen this might happen i could go through and show you they're all the for lack of a better way to put it to serve the the the weasel words that you use when well we this could happen we this might help is that an issue there with the best available site i mean a lot of these cases turn on the best you know agency isn't allowed to rely on the best available science and sometimes the best available science hedges right because scientists can't know things with absolute certainty so when there's limits to what scientists know but the agency has to rely on the best available science it seems to some extent i think your cbd's position is you know the the expectation of greater certainty and more justification is is just impossible given the limits of science well the the supreme court in bed versus spear has said that the that term using the best available science doesn't allow the agency to speculate and that's what they're doing they're not allowed to speculate you use the best available and the economic analysis your honor that we're talking about here is is not scientific it's there's a big report and there's and it's frankly a lot of fluff but the agency itself has expertise i guess i'm confused because i thought your initial argument was they just didn't talk about this at all or or give an explanation at all but now you're saying they gave an explanation it was just too speculative well they argue that was in response to your your question about the benefits the primary benefit and then the service even says that over and over in the rule the primary benefit of designating critical habitat is that area then because becomes subject to the adverse modification standard under section 7 there are these other ancillary benefits that sort of gets tossed up there but the service itself admitted in the rule that that's the primary benefit of designating critical habitat and we agree we agree with that what we don't agree with are sort of larding up the record if you will with these other speculative benefits that again they're they're they're benefits that have nothing to do with designating critical habitat the purpose of designating critical habitat again the touchstone you're conserving the species does it conserve the species if it doesn't provide a conservation benefit into our cross-acclaim argument cross-acclaim cross-claim argument uh it's not prudent to designate it there's no reason to designate it and that's the case we have here when when the agency is saying there are marginal benefits from designating critical habitat but we're not going to exclude any areas uh it's it's it's it's inconsistent it's arbitrary and and then to ignore the fact that there is a requirement confusing aspect of your argument that's saying what they did is just redundant so it makes no difference but yet you're here upset about it so if it's just redundant because everything it requires is already required by something else why do you care well we care because frankly we think there are we think that what they're saying is is is wrong and it's disingenuous but who cares if it if it doesn't cause any effect well quick if the agency is doing what it says it's doing if it's it's if it's protecting species habitat through consulting under the jeopardy standard it's it's not acting consistent with the esa and that's what it's saying it's doing that's not an issue here i understand your point why are you upset if they're saying it doesn't have any effect the reality is it does have an effect okay so then it's not redundant i i don't really understand it it's but your honor they're saying it's redundant i mean do we have they say it's redundant they say well it's redundant then like why do you have standing to challenge this issue i i just don't understand how you can both say you care that there's a problem and there's and the problem is there's nothing happening well there is something happening because they're misapplying they're misapplying section 4b2 they're they're marginalizing the impact of critical habitat and by doing that they're avoiding having to take a hard look at whether they should exclude areas from critical habitat this i've seen this happen over and over again what is the harm if it makes no practical difference in the world what is the harm from that it doesn't make a difference your honor to and specifically to the state of alaska how it does if you're saying the benefits are speculative and and redundant at the same time they're saying it again we're not saying this this is the agency itself saying it but they also say they also identify what why are we listing critical habitat what are we trying to protect what are the threats the threats are commercial activities along the north slope it's oil and gas development it's uh it's commercial transportation that's why alaska we've submitted our comments that's why alaska asked to exclude areas from the critical habitat that's why north slope borough did as well so it does have an impact we think but the agency is is playing it both ways they're saying well this really doesn't this this does nothing uh and it has no impact but if that's true then it's not prudent to designate it why bother so they're playing it both ways well the agency does say that it the designation benefits so i okay they really don't they come up that what they do is they they throw uh they throw a laundry list of of of speculative uh things that have nothing to do with the meat of critical habitat which does it does it provide a conservation benefit to the species they say it doesn't because it's already being protected but then they won't they won't uh exclude any areas if if it really doesn't matter to the agency why not exclude the areas that and north slope borough asked for i mean why why not just go ahead and say yeah you know this is not really doing anything at all that's what they said and again to loop back to where where i started if you look at the exclusion for the navy um where you say well we're going to exclude this area because we really don't have any information about what the conservation value is well if you don't know what the conservation value is why are you why are you designating this critical habitat what other areas uh in the 160 million acres likewise you you don't have conservation uh in from uh information on the conservation value that's the problem that's what judge gleason was getting at with her with her order you designate an enormous area you ignore uh the fact that there's there's large populations and significant habitat in other countries uh and then turn around and say well there's no real this really doesn't provide any benefit but we're not going to exclude any areas either let me let me then turn back to my question about the impact of foreign conservation so one i'd like to know generally your view as to whether it's appropriate to consider foreign conservation efforts and then secondarily to that whether in fact by determining that a species is threatened that that wouldn't that the foreign impact wouldn't already be subsumed in that determination that's a that's a good question uh this is this is frankly a straw man a red red hearing um we argued what we argued was was this critical habitat uh has to be again essential to the conservation of the species that's the touchstone now by by rule you can't designate critical habitat in a foreign country it's limited to to areas within the u.s jurisdiction but you can have a situation where there's so much habitat uh large populations in a foreign country that there really isn't any need to be designating critical habitat in other words to make that analysis of whether uh the habitat is central to the conservation of the species you have to consider you can't designate it there but you have to at least consider it it's part of the overall calculus and unfortunately judge gleason a couple places use the language your honor that you refer to about the uh the requirement when you list right but there are other requirements in the esa for example there's a requirement in the esa itself uh section 4 b 5 b that requires that when the agency is is proposing to designate critical habitat and the species is found in a foreign country uh you have to give notice of that to the foreign country there's also a regulation that the eight that the agencies have adopted uh it's at 50 cfr uh 424.13 that requires that notice or requires that the agency consult with the foreign country when they're considering listing or designating critical habitat again not in the foreign country but if that if that foreign country contains the species or their citizens uh hunt uh the species on the high seas they have to confer with them so it's unfortunate that judge gleason used the language she did our point was really that i'm trying to get what your point is yeah thank you yeah i'm sorry but the point the is that that's part of the calculus that's part of what you have to consider to know whether the critical habitat is essential to the conservation of the species let me give you one other i'm getting low on time one quick example let me use the jaguar example because that's take the facts right out of the the cbd versus fish and wildlife service case the jaguar for example has an enormous range it extends from northern argentina through brazil through central america through mexico uh it's well over uh it's well over a billion acres it's enormous and there's a large there are large populations in in many of these countries so when you designate critical habitat in southern arizona is that critical habitat essential indispensable to the conservation of the species no it's not because regardless of what happens in it to the to the features that that you're targeting in that critical habitat you've got an enormous you've got a large population and an enormous amount of habitat next door in central and south america if the jaguar is going to recover that's where the conservation efforts have to take place preserving habitat and then restricting uses as a result to protect that habitat you're not accomplishing anything there's no real conservation benefit and that's why you have to consider you have to consider what's going on in foreign countries okay we have you over your time thank you for your thank you i'm sorry let's turn to rebuttal please uh thank you your honors just a couple of brief points on rebuttal first on the foreign conservation efforts issue the plain language of the endangered species act simply does not require the agency to consider foreign conservation efforts in designating critical habitat in contrast it specifies that that is a requirement when listing the species indicating that that disparate treatment is intentional and the district court's holding on this issue was inextricably intertwined with its unreasonable determination on the first issue that the agency has to explain why the areas themselves are essential for the conservation of the species um which is the standard for unoccupied habitat not um occupied habitat at issue here um and on the on the exclusion issue um the the the district court was was wrong on this issue as well the agency did everything that the endangered species act required of it and alaska really points to nothing that the agency failed to consider it just doesn't like its analysis and ultimate decision but that is not a reason to overturn the agency's decision particularly where it did an extensive analysis of the economic cost and the benefit of the designations in you know over a hundred pages each on each designation um and um the um again the district court's holding on this point was also intertwined with its erroneous finding on the first issue in the center's appeal and unless the court has any other questions i would ask that this court find that it has jurisdiction to hear this appeal overturn the district court on the three issues at issue in the center's appeal and affirm it on the issue in the cross appeal thank you thank you both sides for the helpful arguments this case is submitted
judges: McKEOWN, FRIEDLAND, SUNG